UNITED STATES DISTRCIT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA and
THE STATE OF MICHIGAN *ex rel.*
GEORGE KARADSHEH, and GEORGE
KARADSHEH, individually,

                Plaintiffs,           Case No. 2:13-cv-13333
                                             Honorable Denise Page Hood
   v.                                  Magistrate Judge David R. Grand

FARID FATA, M.D.; MICHIGAN
HEMATOLOGY-ONCOLOGY, P.C.,
CRITTENTON CANCER CENTER,
ASCENSION HEALTH, *et al.*,

                Defendants.

_____/

**RELATOR'S RESPONSE IN OPPOSITION TO THE
UNITED STATES' MOTION TO DISMISS CROSS-CLAIM**

COMES NOW Relator George Karadsheh, through his counsel, and respectfully submits his Response in Opposition to the United States' Motion to Dismiss his Cross-Claim.

### I.    INTRODUCTION

The Government's Motion to Dismiss ("Motion") is nothing more than a rehashed version of its opposition to Relator's Motion to Reinstate the Qui Tam Complaint, which the Court granted on March 27, 2019 ("Order") and where the Court has *already* held that *[In] reviewing the complaints….however, it seems clear that Karadsheh disclosed a financial arrangement between Fata and Crittenton that, at a minimum, was deserving of scrutiny. Significantly, such disclosures were nearly two years and one year, respectively, before Crittenton made its self-disclosure on July 23, 2015. The Court concludes that this evidence that Karadsheh communicated the same conduct about which the government later obtained a $3.27 Million settlement [that] justifies granting the relief he seeks…* Order at p.10.

The Government reiterates the same argument it made before – Relator's complaints do not name Crittenton Hospital Medical Center ("Crittenton") until after Crittenton self-disclosed and therefore Relator should not receive an alternate remedy.  But, as shown above, the Court has already held that this argument fails, and that Relator is entitled to draw from information disclosed to the Government that set the Government on the trail of fraud, even outside the four corners of the Complaint.  Order at p. 9.

Relator's Cross-Claim clearly alleges in great detail Relator's numerous disclosures about Crittenton's fraud years before Crittenton self-disclosed and the Government settled with it. The numerous disclosures will require significant discovery and exchanges – pursuant to appropriate Protective Orders if necessary – including review of governmental investigative notes of interactions with Relator and the government, review of documents and computer files supplied by Relator to the Government and requiring factual findings by the Court that may be drawn from that discovery.

Therefore, the Government's Motion should be denied.

## II.     PROCEDURAL HISTORY AND SUMMARY OF FACTS

Relator agrees with the Government's recitation of the procedural history of this case and substantially with its statement of facts and timeline, with one exception.  The Government vastly understates the extent of Relator's disclosures to the Government as described in his cross-claim.

It is undisputed that Relator's actions returned at least $17 million of stolen funds to the public fisc. Relator's Cross-Claim, in sum, alleges that it was because of Relator's notice to the Government on multiple occasions between 2013 and 2015 of a specific and systemic pattern of illegal activities, which included improper financial relationships between Crittenton and

Defendant Fata, that the Government was able to secure three separate recoveries against these entities. The Cross-Claim essentially alleges that but for Relator's courageous willingness to come forward with his information previously unknown to and undetected by the Government, the FBI, HHS, and DOJ (and especially the patients harmed by Fata) would not have known about Dr. Fata's illegal conduct, nor would they have discovered the improper financial relationship between Fata and Crittenton.  Crittenton's self-disclosures would not have happened but for the initiation of Relator's *qui tam* law suit, the information subsequently provided by Relator throughout the Government's investigation and the publicity generated by Fata's dramatic arrest, the search warrants executed by the Government and Fata's guilty plea!

In paragraphs 14-37 of his Cross-Claim, Relator provides extensive detail of his contact with numerous government agencies, including both verbal and written disclosures to the Government about Crittenton's fraud, the exact fraud that formed the basis of the Government's 2015 settlement with it and the delivery of his laptop with extensive emails and financial information relating to Fata's operation.  While it is correct that the Relator did not amend his complaint to name Crittenton until after Crittenton's initial non-public self-disclosures, that amendment, while the *Qui Tam* case was pending, should ensure that the Government does not attempt to avoid providing a relator's share to Relator for this alternate remedy – exactly as it is trying to do here – and ratify Crittenton's prophylactic attempt to cover its belated attempt to avoid triple damages and severe penalties because of its two year delay in identifying its involvement after the guilty plea.

Although it does not appear that the Government seriously disputes the facts alleged and whether Relator communicate d with the Government on more than four occasions, including in its Second Supplemental Disclosure, exposing problematic financial arrangements between

3

Crittenton and Fata., at a minimum Relator should be entitled to discovery on these issues and the Government's Motion should therefore be denied.

### III. STANDARD OF REVIEW

Relator adopts the Government's recitation of the applicable standard of review.

### IV. ARGUMENT

Under the False Claims Act, 31 U.S.C. § 3730(c)(5), "[t]he Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty." When the Government does pursue an alternate remedy, the relator "shall have the same rights in such proceeding" as if the Government had pursued the matter under the filed *qui tam* action. *Id.*

By drafting this provision, the legislature sought to both protect and reward relators by concluding that, should the Government elect to pursue an alternate remedy, as it did here, the relator is entitled to the same rights as if the Government had pursued all of the relator's claims in federal court. *See U.S. ex rel. LaCorte v. Wagner*, 185 F.3d 188, 191 (4th Cir. 1999)("Section 3730(c)(5) protects original qui tam plaintiffs when the government chooses to pursue an alternate remedy."). *See also U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634, 648 (6th Cir. 2003)("Section 3730(c)(5) seeks to insure a relator's right to a share of any proceeds obtained through an alternate remedy[.]").

In crafting this language, Congress explicitly included administrative proceedings within 3730(c)(5)'s ambit. Significantly, legislative history suggests that the "alternate remedy" provision was designed to enable the Government to pursue remedies for recovery based on a false claim "which may be available through the administrative process." *See* S. Rep. No. 99-345

at 27 (noting that the Department of Health and Human Services is authorized to use administrative proceedings to recover false claims).

The Government's position on this issue in the case at hand flies in the face of the spirit of the FCA. The FCA was created to provide incentives intended to encourage potential whistleblowers to come forward and expose activity causing fraudulent harm to Government agencies. Here, Relator Karadesh was the first to inform the Government of the concerns he had about his employer, Defendant Fata. Because of the detail and credibility of Relator Karadesh's insider information, the FBI and HHS raided each of Defendant Fata's eight offices. The raid of Defendant's offices led to the discovery of computer and paper files containing information regarding improper practices and financial agreements with Crittenton. Relator continued to cooperate with the FBI throughout the investigation; he provided the FBI the weekend prior to the raids, with complete access to his company supplied laptop and email accounts, gave interviews further exposing problematic financial relationships between Crittenton and Michigan Hematology-Oncology, P.C. ("MHO"). Relator also discussed his concerns about the improper connection between MHO and Crittenton with the Department of Justice, Criminal Division. Relator provided Government agents with access to emails and other "hot documents" containing information about improper financial relationships involving Crittenton.

The Government's arguments boil down to the same contentions made in its opposition to Relator's Motion to Reopen: 1) Crittenton is not named in Relator's complaint prior to the self-disclosure, and 2) the later amended complaint is not sufficiently specific.

Those arguments already fell flat once as this Court has already held that a Relator can pursue an alternate remedy if he can prove that he provided significant and substantial detail about the alleged fraud to the Government prior to the government's pursuit of the alleged fraud,

5

regardless of what is stated in relator's complaints. Order at 9. Relator's Cross-Claim makes those exact allegations. Specifically, Relator alleges that from 2013-2015, Relator provided substantial and detailed evidence to the government, on many occasions, both verbally and in writing, about Crittenton's fraud, and that, armed with Relator's evidence, the Government took administrative action analogous to an administrative proceeding as contemplated under 3730(c)(5). Cross-Claim at par. 14-37. In other words, Relator alleges that the $3.27 million settlement reached by the Government and Crittenton was the direct result of the information provided by Relator, and constitutes an "alternate remedy" as defined by the FCA.

At a minimum, the Relator is entitled to discovery on these questions of fact, which then may be resolved at trial.

### V. CONCLUSION

Based on the facts stated in Relator's Cross-Claim and reiterated in the Opposition above, Relator respectfully requests that this Court deny the United States' Motion to Dismiss his Cross-Claim.

June 21, 2019                    Respectfully submitted,

/s/ David L. Haron
David L. Haron (P14655)
dharon@jameshoyer.com
James Hoyer, P.A.
30300 Northwestern Highway, Suite 115
Farmington Hills, MI  48334
(248) 539-7420

David L. Scher (to be admitted pro hac vice)
dave@jameshoyer.com
James Hoyer, P.A.
1300 I Street N.W., Suite 400E
Washington DC  20005
(202) 975-4944

Attorneys for Relator

## CERTIFICATE OF SERVICE

I hereby certify that the within Response in Opposition to Motion to Dismiss was served via ECF on all parties of record on June 21, 2019.

/s/ David Haron
David Haron, Counsel for Relator